**PERMANENT GENERAL
ASSURANCE CORP.,
Plaintiff,**

v.

**James Thomas MOORE, Jr., as Personal Representative of the Estate of James Thomas Moore, III, and Francina Thompson, Defendants.**

No. C.A.8:04–2506–20.

United States District Court,
D. South Carolina,
Anderson Division.

Nov. 15, 2004.

Robert D. Moseley, Jr., Esquire, Leatherwood Walker Todd & Mann, P.C., Greenville, SC, for Plaintiff/Petitioner.

Mark B. Tinsley, Esquire, Gooding and Gooding, P.A., Allendale, SC, for Defendant/Respondent.

## ORDER

HERLONG, District Judge.

This matter is before the court on James Thomas Moore, Jr. ("Moore"), as Personal Representative of the Estate of James Thomas Moore, III's motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. After review, the court grants Moore's motion to dismiss.

## I. FACTUAL BACKGROUND

This case arises out of an automobile accident that occurred on April 12, 2003. On that date, Francina Thompson ("Thompson") allegedly turned in front of a motorcycle driven by James Thomas Moore, III, causing an accident which tragically resulted in his death. (Def.'s Mem. Supp. Mot. Dismiss at 1.) Thompson's liability insurance policy provided coverage limits of Fifteen Thousand Dollars ($15,000) per person/Thirty Thousand Dollars ($30,000) per accident. (Id. at 2.) Moore offered to settle his claim for the policy limits. However, the insurer, Permanent General Assurance Corp. ("Permanent General"), refused to settle within the policy limits. (Id.) After the expiration of the settlement offer, Moore filed wrongful death and survival actions ("underlying cases") against Thompson in state court. (Id.) After the underlying cases were filed, Permanent General offered to settle for the policy limits of $15,000. (Pl.'s Mem. Opp'n Def.'s Mot. Dismiss at 2.) Moore refused to settle, asserting that Permanent General acted in bad faith in rejecting the previous settlement offer. (Def.'s Mem. Supp. Mot. Dismiss at 2.) Permanent General brought this declaratory judgment action, seeking a declaration that it has not engaged in bad faith for failing to settle with Moore. Permanent General alleges that liability for the accident is contested. Moore filed the instant motion asserting that this action must be dismissed because (1) no case or controversy exists in this case, and (2) the court should abstain from hearing this matter.[1]

---

1. In addition, Moore filed this motion as the real party in interest on behalf of Thompson because Moore alleges Thompson is unrepresented and not taking any action in this lawsuit.

## II. Discussion of the Law

### 1. Ripeness

Moore moves to dismiss the complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure for "lack of jurisdiction over the subject matter." Subject matter jurisdiction in the federal courts is limited to adjudicating actual "cases" and "controversies" under Article III of the United States Constitution. *See Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). "Doctrines like standing ... and ripeness are simply subsets of Article III's command that the courts resolve disputes, rather than emit random advice." *Bryant v. Cheney,* 924 F.2d 525, 529 (4th Cir.1991).

"[The] ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Social Servs. Inc.,* 509 U.S. 43, 57 n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993). "Ripeness is peculiarly a question of timing." *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 580, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) (internal quotation omitted). "Its basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Id.* (internal quotation omitted).

■ "[T]he doctrine of ripeness is one of indefinite contours, especially when considered in conjunction with a declaratory judgment action." *Warner Cable Communications Inc. v. Borough of Schuylkill Haven,* 784 F.Supp. 203, 206 (E.D.Pa. 1992). While the Declaratory Judgment Act allows a court to issue a judgment before an injury is accomplished, there must be an actual controversy at issue. *See Delavigne v. Delavigne,* 530 F.2d 598, 601 (4th Cir.1976). "[A] declaratory judgment may not be given for a purely hypothetical situation [or as] ... an advisory opinion." *A.S. Abell Co. v. Chell,* 412 F.2d 712, 719 (4th Cir.1969). As noted by Permanent General, to present an actual case or controversy, the "facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941).

■ In this case, Permanent General asks the court to look into the future and stave off the threat of potential litigation. This matter is not ripe for a declaratory judgment. Permanent General's declaratory judgment suit is premature because a judgment has not been entered in the underlying cases that expose Thompson to a verdict in excess of the insurance policy limits. *See e.g. Andrews v. Central Sur. Ins. Co.,* 271 F.Supp. 814, 821 (D.S.C.1967) (finding that insured in a successful bad faith action may recover damages in "the full amount of the judgments now outstanding against him, including interest and costs"); *see also* 21 Am.Jur. Trials 229 § 10 (2004) ("It is readily inferable ... that the insured's cause of action against his insurer for bad faith failure to settle arises when the excess judgment is rendered or the insurer's bad faith occurs, whichever is the *later* event."). If a verdict was returned that was within the policy limits, then a declaratory judgment action would be unnecessary because Thompson would not have a bad faith claim. Further, Permanent General contests liability, which is important in evaluating a bad faith claim and will be resolved in the underlying cases. Permanent General is essentially asking the court to issue an advisory opinion regarding whether it has engaged in bad faith and conduct a mini-trial of the underlying cases to evaluate issues of liability for the accident.

Permanent General alleges that the threat of litigation is immediate because the underlying actions have been filed and Moore is seeking an excess judgment. However, the court finds that the threat of litigation is not immediate because liability is contested in the underlying cases, and a jury could find for the defendant or render a verdict within the policy limits. The threat of litigation is simply not enough.

Permanent General's reference to case law from jurisdictions other than South Carolina involving other insurance contexts is unpersuasive. Permanent General relies, in part, on *Spivey Co. v. Travelers Ins. Cos.*, 407 F.Supp. 916 (E.D.Pa.1976), for the proposition that a final judgment is not required to bring a declaratory judgment action for bad faith failure to settle within the limits of a liability policy. In *Spivey*, the United States District Court for the Eastern District of Virginia found that "[t]he presence of an 'actual controversy' is measured at the time th[e][c]ourt acts," and at the time of the court's review of the case, the plaintiff was liable to pay an excess judgment in the amount of $210,000. *Id.* at 918. Therefore, the court concluded that there was "no doubt that an 'actual controversy' exist[ed] in this case since there [was] a judgment against plaintiff, who [was] therefore under a liability to pay $210,000." *Id.* at 917–18. The court disagrees that *Spivey* supports Permanent General's argument because no judgment has been rendered in the underlying cases.

In addition, Permanent General relies in part on *Myers v. State Farm Mut. Auto. Ins. Co.*, 950 F.Supp. 148 (D.S.C.1997), where the court opined that, when faced with the issue, the "South Carolina Supreme Court will hold ... that an insured

is not required to obtain a judgment against an at-fault driver before the insured's carrier's duty arises to exercise good faith and deal fairly with the insured regarding underinsured benefits." *Id.* at 150. *Myers* is distinguishable from this case for three reasons. First, in this case, the court is not addressing underinsured benefits ("UIM"), which is distinct from liability coverage. UIM coverage is purchased by the insured to provide coverage from the insured's own carrier if the insured is injured and the at-fault party has insufficient insurance coverage to compensate for the insured's injuries. Second, in *Myers*, there was a South Carolina statute, S.C.Code Ann. § 38–77–160, on point, providing that a lawsuit must be initiated against the at-fault party prior to bringing a claim for UIM benefits. *Id.* at 149–50. However, the statute did not expressly require that a judgment be obtained against the at-fault party. *Id.* In this case, there is no applicable statute on point. Finally, in *Myers*, liability against the at-fault party was clear. *Id.* at 150–51. Permanent General contends that liability is contested in the underlying actions. For these reasons, the court finds that *Myers* is distinguishable from the instant case. Based on the foregoing, Permanent General's declaratory judgment action is dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

It is therefore

**ORDERED** that Moore's motion to dismiss is granted.[2]

**IT IS SO ORDERED.**

---

2. Because the court grants Moore's motion to dismiss for lack of subject matter jurisdiction, it is unnecessary for the court to address Moore's abstention argument in detail. However, if the court had subject matter jurisdic-

tion over this case, the court would have declined to exercise jurisdiction under the abstention doctrine set forth in *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 377 (4th Cir.1994).